UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2003 OCT 15  P 12: 24

| | |
|---|---|
| COASTLINE TERMINALS OF CONNECTICUT, INC., <br>     Plaintiff, <br><br> v. <br><br> UNITED STATES STEEL CORPORATION, <br>     Defendant/Third-Party Plaintiff, <br><br> v. <br><br> NORTHEAST WASTE SYSTEMS, INC., <br> WASTE MANAGEMENT OF <br> CONNECTICUT, INC., <br> FPS HARBOUR HOLDINGS, INC., <br> BLAKESLEE ARPAIA <br> CHAPMAN, INC., WHITE OAK <br> CORPORATION, NEW HAVEN <br> TERMINAL, INC., and <br> LOGISTEC CONNECTICUT, INC., <br><br>     Third-Party Defendants. | CIVIL ACTION NO. <br> 3:00CV1698 (WWE) <br><br><br><br><br><br><br><br><br><br> OCTOBER 14, 2003 |

**DEFENDANT UNITED STATES STEEL CORPORATION'S
REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ORDER
AS TO WOODCHIP REMOVAL**

On September 19, 2003, Defendant United States Steel Corporation ("USS") moved for an order requiring Plaintiff Coastline Terminals of Connecticut, Inc. ("Coastline") to provide USS at least 72 hours notice before the woodchip piles located at the subject property (the "Site") were removed forever by Coastline so that USS would have the opportunity to collect an additional round of woodchip samples. By Coastline's October 6, 2003 objection, Coastline

generally argues (i) that USS already had its opportunity to conduct whatever sampling USS desired and, therefore, USS should not be permitted a second opportunity and (ii) that Coastline should not be inconvenienced by such a second round of sampling. As discussed more fully below, because the contaminant content of the woodchips is highly relevant to this case and because any inconvenience to Coastline will be minimal, USS should be permitted the opportunity to collect an additional round of woodchip samples.[1]

I.  The Analysis Of The Woodchip Piles Is Highly Relevant To The Merits Of This Case.

By way of background, according to Coastline's discovery responses to date, Coastline is seeking millions of dollars in alleged damages from USS related to the presence of ten so-called "Claimed Substances" at the Site, including lead. The analyses of two woodchip samples conducted by both USS and Coastline to date confirm the existence of lead in Coastline's woodchips at concentrations exceeding the federal EPA threshold for "hazardous waste". The other 18 samples collected by USS and Coastline and analyzed only by USS (but, for some reason, not analyzed by Coastline) also contain at least the "hazardous substance" lead. For the following five reasons, the importance of the woodchip piles' composition, including USS's ability to sufficiently document same, warrants granting USS the opportunity to collect additional woodchip samples.

---

[1] The woodchips at issue currently are located on so-called Lot 1 of the Site, along the western boundary of the Site and along the eastern bank of the Quinnipiac River. Those woodchips, however, actually are comprised of two large woodchip piles each of approximately 4,000 cubic yards or more. Specifically, one of those piles just recently was moved by Coastline from so-called Lot 2 (the "Lot 2 Woodchip Pile"), a portion of the Site recently sold by Coastline to a third-party. The Lot 2 Woodchip Pile was deposited generally along the eastern (inland) side of the large woodchip pile which already existed on Lot 1 (the "Lot 1 Woodchip Pile"). Information in the file also suggests that the Lot 2 Woodchip Pile previously had been moved to its former location on Lot 2 from yet a third location on the Site.

2

First, while Coastline in its objection admits that the laboratory results prepared on behalf of Coastline "were similar to the data prepared on behalf of USS for the samples analyzed", Coastline analyzed only two of the 20 samples collected by the parties. Coastline never has confirmed its agreement with USS's laboratory analyses of the other 18 samples collected. A second round of sampling and analyses by USS, if providing similar results, directly will support the accuracy of USS's initial laboratory results.[2]

Second, Coastline asserts a CERCLA § 113 equitable contribution claim which requires the trier of fact to consider and apportion all parties' responsibility, if any, for any contamination present at the Site. Additional sampling of the woodchip piles directly relates to the central issue of Coastline's own responsibility for any contamination, including lead contamination, present at the Site.

Third, Coastline continues to assert a CERCLA § 107 claim against USS for full reimbursement of any environmental investigation and remediation costs incurred by Coastline with respect to the Site. That CERCLA § 107 claim, however, can be defeated as a matter of law by, among other things, establishing that Coastline itself brought any of the subject contaminants onto the Site and/or was involved in the release of same into the environment (that is, by showing that Coastline itself is a "potentially responsible party" as defined by CERCLA). USS on prior occasions has requested that Coastline, in light of the undisputed facts of this case,

---

[2] Given that Coastline alone apparently brought the woodchip piles to the Site, stored the woodchips thereon in an open and uncontained manner, moved at least one woodchip pile about the Site, and ultimately is responsible for removing the woodchips from the Site and arranging for disposal, USS suspects that Coastline consciously decided not to analyze the remaining 18 samples in order to claim ignorance of the contaminant levels in the woodchip piles. USS further suspects that Coastline has taken this approach for the purpose of not creating any additional evidence exonerating USS and incriminating Coastline as to the conditions present at the Site and/or for the purpose of avoiding Coastline's statutory and regulatory obligations as to the (expensive) manner in which such apparently hazardous wastes must be stored and disposed.

3

voluntarily withdraw its CERCLA § 107 claim (which requests Coastline has denied), and USS renews that request in light of Coastline, as a potentially responsible party, being limited as a matter of law to a CERCLA § 113 equitable contribution claim. USS, however, does not expect Coastline to voluntarily withdraw its CERCLA § 107 claim, and, because Coastline's CERCLA § 107 claim against USS is the most encompassing claim asserted in this case, USS should be given the opportunity to collect sufficient evidence to defend itself against same.

Fourth, certain of Coastline's current interrogatory responses state that Coastline never handled, stored, used or disposed of hazardous substances or any of the Claimed Substances at the Site. USS's and Coastline's own recent laboratory analyses, however, demonstrate that such Coastline sworn discovery responses are, in fact, false at least as to lead. Accordingly, USS now desires to analyze the woodchip piles for the presence of all ten of the Claimed Substances (as well as possibly other hazardous substances). Certain such substances, however, require analysis within a limited period from the time of collection, known as the sample's holding time. Unfortunately, the holding time in which to conduct valid laboratory analyses for certain of the Claimed Substances has expired with respect to the previous 20 samples collected by USS during its first visit, and, therefore, USS needs to collect "fresh" woodchip samples.

Fifth, given the distinct histories (including locations at the Site and possibly the length of time present at the Site) of the Lot 1 Woodchip Pile and the Lot 2 Woodchip Pile, USS wants to insure that a statistically sufficient number of samples is collected from each such woodchip pile to establish that the results of the laboratory analyses are representative of the composition of the entirety of each woodchip pile. Again, the woodchip piles are enormous, and USS does not want to leave Coastline any grounds to argue that the characterization of the Lot 1 and Lot 2 Woodchip Piles is scientifically deficient.

4

In light of the above, USS should be permitted to collect additional woodchip samples. Such additional sampling is highly relevant and should be ordered.

II.  A Second Round Of Sampling Will Not Substantially Inconvenience Coastline.

With respect to the issue of any alleged inconvenience, Coastline argues that there is "absolutely no reason to subject the Site owners to another intrusion by USS ...." For the following three reasons, any inconvenience will be minimal and does not outweigh USS's need for an additional round of sampling.

First, the only Site owner affected is Coastline. Both the Lot 1 and Lot 2 Woodchip Piles now are located solely on Lot 1, which is owned only by Coastline. Those woodchip piles are located at the far western end of the Site and are not in proximity to the operations of any other owner or operator at the Site.

Second, the proposed sampling will not disrupt Site operations. No drilling rigs or other subsurface work is involved. The sampling of the woodchip piles simply consists of an environmental consultant collecting samples from predetermined locations of the woodchip piles and creating a chain of custody log with respect to same. USS estimates that such additional sampling will require only approximately three hours.

Third, and finally, USS is willing to collect the woodchip samples within the next 30 days in order to allow Coastline the freedom thereafter to remove the woodchips at its convenience without also needing to provide USS the opportunity to take additional samples at that time. While Coastline obviously still will have the obligation to update its discovery responses upon the removal of the woodchips, any notice to USS at that time would not also involve the coordination of additional USS sampling.

In light of the above, any minor inconvenience suffered by Coastline does not defeat USS's request for the collection of additional woodchip samples.

III. Conclusion

For the foregoing reasons, USS should be given the opportunity to collect additional woodchip samples from the Lot 1 and Lot 2 Woodchip Piles within the earlier of (i) 30 days from the date of this Court's order with respect to same or (ii) prior to the removal of such woodchips from the Site.

> UNITED STATES STEEL CORPORATION
>
> By: _____
> Brian P. Daniels (ct 11863)
> John R. Bashaw (ct 15612)
> BRENNER, SALTZMAN & WALLMAN LLP
> Its Attorneys
> 271 Whitney Avenue
> New Haven, CT 06511
> Tel. (203) 772-2600

## CERTIFICATION

I hereby certify that a true and accurate copy of the foregoing was served via United States first-class mail, postage prepaid, this 14th day of October, 2003 upon:

David J. Monz, Esq.
Updike, Kelly and Spellacy, P.C.
265 Church Street
One Century Tower
New Haven, CT 06510
Counsel for Plaintiff and for New Haven
   Terminal, Inc.
(and via facsimile)

Alan G. Schwartz, Esq.
Wiggin & Dana
One Century Tower
265 Church Street
New Haven, CT 06508-1832
Counsel for New Haven Terminal, Inc.

Joseph P. Williams, Esq.
Matthew Ranelli, Esq.
Shipman & Goodwin LLP
One American Road
Hartford, CT 06103-2819
Counsel for Waste Management of
   Connecticut, Inc. and for
   Northeast Waste Systems, Inc.

Ann M. Catino, Esq.
Laurie R. Steinberg, Esq.
Halloran & Sage LLP
225 Asylum Street
Hartford, CT 06103-4303
Counsel for Blakeslee Arpaia Chapman, Inc.

Eric Lukingbeal, Esq.
Richard M. Fil, Esq.
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103-3597
Counsel for FPS Harbour Holdings, Inc.

Christopher P. McCormack, Esq.
Matthew A. Sokol, Esq.
Tyler, Cooper & Alcorn
205 Church Street
P.O. Box 1936
New Haven, CT 06509-1910
Counsel for Logistec Connecticut, Inc.

William Riiska, Esq.
P.O. Box 1340
3 Farnam Road
Lakeville, CT 06039
Counsel for FPS Harbour Holdings, Inc.

_____
Brian P. Daniels (ct 11863)

752305.doc

7