UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| COASTLINE TERMINALS OF CONNECTICUT, INC., <br>     Plaintiff, <br><br> v. <br><br> UNITED STATES STEEL CORPORATION, <br>     Defendant/Third-Party Plaintiff, <br><br> v. <br><br> NORTHEAST WASTE SYSTEMS, INC., WASTE MANAGEMENT OF CONNECTICUT, INC., FPS HARBOUR HOLDINGS, INC., BLAKESLEE ARPAIA CHAPMAN, INC., WHITE OAK CORPORATION, NEW HAVEN TERMINAL, INC., and LOGISTEC CONNECTICUT, INC., <br><br>     Third-Party Defendants. | CIVIL ACTION NO. <br> 3:00CV1698 (WWE) <br><br><br><br><br><br><br><br> FEBRUARY 18, 2004 |

**UNITED STATES STEEL CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ORDER RE: COASTLINE TERMINALS OF CONNECTICUT, INC.'S AND NEW HAVEN TERMINAL, INC.'S FAILURE TO COMPLY WITH DISCOVERY ORDER**

Defendant United States Steel Corporation ("USS") hereby submits this memorandum of law in support of its Motion, pursuant to Rule 37 of the Federal Rules of Civil Procedure ("Rule 37"), for relief due to the failure by Plaintiff Coastline Terminals of Connecticut, Inc. ("Coastline") and Third-Party/Apportionment Defendant New Haven Terminal, Inc. ("NHT")

**ORAL ARGUMENT REQUESTED.**
**TESTIMONY MAY BE REQUIRED.**

to comply with this Court's (Fitzsimmons, U.S.M.J.) December 2, 2003 Ruling on Pending Discovery Matters (the "Ruling", attached hereto as <u>Exhibit A</u>).[1]  In short, Coastline and NHT have failed to disclose as ordered (i) information concerning communications with USS former employees and (ii) information concerning certain historic environmental conditions at the subject property (the "Site"), including previously remediated conditions, contaminated woodchip piles, and the spreading of mulch over portions of the Site.  For the reasons set forth below, USS requests that this Court enter an order (i) prohibiting the introduction into evidence (including the reliance thereon by any expert witnesses) of any of the responsive information concerning USS's former employees, (ii) taking certain facts regarding the contaminated woodchip piles and mulch to be established for the purposes of this action, and (iii) awarding USS its reasonable expenses of this Motion, including attorneys' fees.[2]

I.   <u>COASTLINE'S FAILURE TO DISCLOSE INFORMATION CONCERNING COMMUNICATIONS WITH USS'S FORMER EMPLOYEES</u>.

Pursuant to Section 1. of the Ruling, this Court ordered Coastline to disclose (i) the identity of the former USS employees contacted by Coastline's environmental consultant, Triton Environmental, Inc. ("Triton"), and the content of those conversations, (ii) any information provided by former USS employees to Coastline's counsel that was conveyed to Triton (or, alternatively, a sworn statement by Coastline stating "clearly and affirmatively" that no such information was conveyed), (iii) the name, address and telephone number of each

---

[1] Coastline and NHT are represented by common counsel, Attorneys David Monz and Scott Koschwitz of the law firm of Updike, Kelly & Spellacy, P.C.

[2] This Court, at page 6 of the Ruling, already has reserved on the question of USS's attorneys' fees with respect to Coastline's and NHT's continued failure to disclose information with respect to historic environmental conditions at the Site.  To the extent this Court does find that an award of attorneys' fees in connection with that Ruling and/or as a result of this Motion is appropriate, USS will submit a supporting affidavit within any period of time ordered by the Court.

former employee likely to have discoverable information that Coastline may use to support its claims, (iv) communications between former USS employees and Coastline, and (v) the identity of the USS employees contacted and the information provided during any interviews performed for the purpose of obtaining information that may be useful to the environmental investigation and potential remediation of the Site with the assurance that there would be no negative repercussions to those former employees.  While Local Rule 37(a)(5) required compliance within 10 days of the filing of the Ruling (that is, by December 14, 2003), the Ruling was not received by Coastline and NHT until December 15, 2003, and, therefore, USS agreed (in a telephone conversation of December 18, 2003) to allow Coastline and NHT additional time to comply until December 31, 2003.

As of the date hereof, absolutely no information has been disclosed by Coastline as ordered under Section 1. of the Ruling.

II.     COASTLINE'S AND NHT'S FAILURE TO DISCLOSE INFORMATION AS TO HISTORIC ENVIRONMENTAL CONDITIONS AT THE SITE.

Pursuant to Section 2. of the Ruling, Coastline and NHT were ordered to provide, within 10 days, complete responses to Interrogatory 1 of USS's second set of discovery requests and to Interrogatories 2, 3 and 5 of USS's fourth set of discovery requests generally seeking information as to historic environmental conditions at the Site, including information as to previously remediated environmental conditions, contaminated woodchip piles, and the spreading of mulch over portions of the Site.[3]  Although Coastline and NHT did serve supplemental responses dated December 31, 2003 (attached hereto as Exhibits B and C,

---

[3] For the same reasons set forth above with respect to the deadline for Coastline's disclosure of information related to USS's former employees, USS agreed to extend Coastline's and NHT's disclosure deadline with respect to historic environmental conditions until December 31, 2003.

3

respectively), those supplemental discovery responses do not comply with the Ruling. Because the procedural background related to USS's second set of discovery requests is different than the background related to USS's fourth set of discovery requests, USS discusses these two sets of discovery requests separately.

      A.    <u>NHT's Failure To Provide A Complete Response To Interrogatory 1 Of USS's Second Set Of Discovery Requests</u>.

By means of Interrogatory 1 of its second set of discovery requests, USS sought information concerning the historic environmental conditions of the Site, including previously remediated conditions and those conditions associated with the contaminated woodchips/CTDEP fugitive dust emissions control order, and specifically, the identity of the NHT representatives who also became associated with Coastline who had knowledge of any facts concerning any environmental conditions of the Site, the facts known, and the dates on which such facts became known to such persons. As is evidenced by the face of NHT's attached supplemental response, NHT once again responds to that Interrogatory 1 only as to conditions "[o]<u>ther than</u> conditions remediated by U.S. Steel in 1985 and conditions discussed in the fugitive dust control order issued by the Department of Environmental Protection to NHT" (emphasis added). Accordingly, NHT continues to refuse to disclose the requested information concerning all historic environmental conditions at the Site.

Importantly, by failing in its December 31, 2003 supplemental discovery response to provide the subject information, NHT now stands in violation of <u>three</u> orders of this Court. <u>See</u> May 8, 2003 Ruling on USS's Motion for Order at pp. 2-3 (attached hereto as <u>Exhibit D</u>), August 18, 2003 Discovery Ruling at pp. 13-14 (attached hereto as <u>Exhibit E</u>), and the Ruling at p. 6 (<u>Exhibit A</u>). Thus, NHT's improper conduct has continued for over <u>nine months</u> since

4

this Court's first order and has now forced USS to seek relief from this Court for a <u>fourth</u> time.[4]

### B. Coastline's And NHT's Failure To Provide Complete Responses To Interrogatories 2, 3 And 5 Of USS's Fourth Set Of Discovery Requests.

By means of Coastline's October 25, 2002 supplemental discovery response, Coastline identified the ten substances for which Coastline was seeking relief from USS, including lead. That list of ten substances subsequently has been referenced by the parties as the "Claimed Substances". By means of Interrogatories 2, 3 and 5 of USS's fourth set of discovery requests, USS sought information as to (i) each Claimed Substance handled, stored, used or disposed at the Site, (ii) each hazardous substance handled, stored, or disposed at the Site,[5] and (iii) any contamination on the Site (of Claimed Substances, hazardous substances or otherwise), respectively.

In its attached supplemental responses to these interrogatories (<u>Exhibit C</u>), NHT does admit that the woodchips were deposited on the Site in the mid-1990s but denies knowledge of any mulch being deposited on the Site. Further, NHT swears under oath that the woodchips "have not contained, and do not contain, any Claimed Substance", and that "NHT did not handle, store, use, or dispose of any 'hazardous substances'". Finally, NHT once again excludes from its supplemental response the conditions associated with the woodchips/fugitive dust control order in swearing under oath that "NHT was unaware of the environmental condition of the Site until after NHT's sale of the Site to Coastline in July 1996." Similarly,

---

[4] USS's second set of discovery requests was served upon NHT on May 7, 2001, with NHT substantively responding to same for the first time on March 27, 2002. Thus, NHT's refusal to provide this information actually dates back <u>over 2 ½ years</u>.

[5] Lead undisputedly constitutes a "hazardous substance" under CERCLA. <u>See</u> 42 U.S.C. 9601(14).

5

Coastline swears under oath that it "did not handle, store, use, or dispose of any other Claimed Substances on Site" and that "the woodchips did not contain any Claimed Substance when deposited on Site."[6]  See Exhibit B.  Further, Coastline swears that it "did not handle, store, use, or dispose of any 'hazardous substances'".  Id.

Such NHT and Coastline answers, if true, arguably would have constituted substantial compliance with this Court's Ruling.  NHT's and Coastline's own documents and judicial admissions, however, undisputedly establish, to the contrary, that the woodchips/mulch contain lead, that the soil below the woodchip piles also contains lead, and that some of the mulch has been spread at the Site.  Therefore, these same documents and admissions demonstrate that the sworn answers provided on behalf of Coastline and NHT are objectively false.  The basis for USS's contention in this regard includes, but is not limited to, the following (collectively attached as Exhibit F):

1. February 18, 1994 NHT memorandum regarding NHT's fugitive dust control plan which states, "All mulching material has been received and remains stockpiled in areas designated as areas not-in-use though some of the mulch has already been spread" (bates-stamped NHT 2356).

2. November 9, 1998 Triton letter to Coastline stating (i) that previous sampling of the woodchip piles reported a total lead concentration of 2,800 parts per million, with those samples having been taken when the woodchip pile was located in the "general vicinity of Buildings 103 and 104"; (ii) that five woodchip pile samples collected by Triton on September 11, 1998 contained total lead concentrations ranging from 110 to 390 parts per million; that "this type of waste must be disposed of at a regulated facility"; that the lead concentrations within the woodchips prevented them from being reused on the Site; that "the lead analysis indicate that the wood chips exhibit potential to leach lead"; and that "reuse of the wood chips would compromise the supporting information within the request [for widespread polluted fill variance] which states that Coastline has no association with the polluted fill" at the Site (bates-stamped TR 980-985).

---

[6] Coastline's response appears to have been limited improperly only to "when [the woodchips were] deposited on Site", as opposed to through the present.

6

3. Triton 2000 Summary stating that NHT had brought in 3,000 tons of woodchips on the Site which were determined to contain lead sufficient to prevent the woodchips from being reused on the Site (bates-stamped 1390).

4. February 24, 2000 Triton fax transmittal to Coastline stating that Triton collected six additional wood chip composite samples for laboratory analysis and concluded that "total lead was detected in each of the samples at concentrations ranging between 140 and 400 milligram per kilogram (mg/kg) and that leachable lead (TCLP analysis) was detected at concentrations ranging between 0.063 and 0.35 milligram per liter (mg/l)" (bates-stamped TR 986).

5. May 2, 2003 Triton fax transmittal stating: "The wood chips originated from demolition debris/wood siding, which was run through a wood chipper. The average size of the material is approximately 3 inch diameter and smaller. The wood chips have been at the site and exposed to the weather since prior to 1998. Therefore, the natural composting process has begun, and a large quantity of the material may be compost. Originally, painted surfaces on the wood chips were visible. However, the painted surfaces may have since been weathered away" (bates-stamped 5649).

6. May 27, 2003 Triton letter to Coastline stating: "Based on our understanding, approximately 4,000 cubic yards of wood chip materials and other debris were placed at the [Site] prior to 1998. Triton understands that the materials originated from off-site building demolition activities associated with the CTDEP mandated dust suppression requirement. Initial sampling of the wood chip/debris piles was conducted by Triton in September of 1998 at the request of Coastline. At the time of sample collection/analysis, a significant percentage of the wood chips were found to have painted surfaces. Recent observations indicate that the pile also contains other types of debris such as metal, concrete, steel cables, rail-road ties, and soil. Additionally, pieces of pre-cut wood and nails were observed within the material. Due to the presence of paint on the wood chips, composite samples collected were analyzed for total lead at that time. Lead was detected in the samples at concentrations ranging from 110 to 390 mg/Kg" (bates-stamped 50156).

7. Coastline's October 6, 2003 objection to USS's motion for order as to woodchip removal in which Attorney David Monz, counsel for Coastline, stated (emphasis added), "In reality, <u>there is no material dispute as to the level of lead in the piles of woodchips and soil</u> sampled and analyzed by consultants for USS and Coastline."

Overall, Coastline and NHT apparently have decided to submit objectively false sworn answers rather than provide truthful, complete responses as ordered by this Court in the Ruling.

7

III.     RELIEF REQUESTED BY USS.

Rule 37(b)(2), entitled "Sanctions by Court in Which Action Is Pending", states, in pertinent part:

> If a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> (A)     An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
>
> (B)     An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;
>
> (C)     An order striking out pleadings or parts thereof, ... or dismissing the action or proceeding or any part thereof ....
>
> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Under the circumstances of this case, USS requests (i) that this Court prohibit Coastline from introducing any evidence (including prohibiting Coastline's expert witnesses from considering same) as to the former USS employees contacted by Coastline, its counsel or Triton through the date hereof, and that Coastline be ordered to provide a sworn list identifying all such persons contacted, (ii) that this Court hold to be established that Coastline and NHT solely are the cause of, and solely are responsible for all investigatory and remedial expenses associated with, any and all contamination at the Site present below the footprints of any areas at which the woodchips/mulch ever were stockpiled or spread (including, but not limited to, the general vicinity of Buildings 103 and 104 and those areas designated on the Triton map bates-stamped

8

TR985 attached hereto in Exhibit F), and that Coastline and NHT be ordered to provide a sworn map identifying, to scale, all such footprints/areas, and (iii) that this Court award USS its attorneys' fees against Coastline, NHT and the counsel advising them, jointly and severally.[7]

Particularly pertinent to USS's request for relief, the Second Circuit has noted:

> ... The court's order also functions as a final warning that sanctions are imminent, and specifically informs the recalcitrant party concerning its obligations.
>
> ...
>
> A district court has wide discretion in imposing sanctions, including severe sanctions, under Rule 37(b)(2), and will only be reversed if its decision constitutes an abuse of discretion. Moreover, the factual findings upon which sanctions are based will not be disturbed unless they are shown to be clearly erroneous.
>
> The discovery provisions of the Federal Rules of Civil Procedure are designed to achieve disclosure of all the evidence relevant to the merits of a controversy. It is intended that this disclosure of evidence proceed at the initiative of the parties, free from the time-consuming and costly process of court intervention. When a party to seeks to frustrate this design by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate.
>
> ...
>
> ... Although an order granting a claim and precluding a party from presenting evidence in opposition to it is strong medicine, such orders are necessary on appropriate occasion to enforce compliance with the discovery rules and maintain a credible deterrent to potential violators.

---

[7] By means of its Motion, USS requests the narrowest relief addressing Coastline's and NHT's conduct. For example, while USS believes that Coastline's and NHT's violation of the Ruling would support a complete dismissal of, at a minimum, Coastline's CERCLA claims, USS does not request that broader relief. See, e.g., Ruggiero v. Waterbury Day Nursery, 1999 U.S. Dist. LEXIS 18935, **1-3 (D. Conn. 1999) (granting motion to dismiss based upon the plaintiff's failure to produce documents in accordance with certain court orders) (Exhibit G); J-Square Marketing, Inc. v. Sipex Corp., 1999 U.S. Dist. LEXIS 12395, **31-33 (D. Conn. 1999) (adopting magistrate judge's recommended dismissal based upon the plaintiff's discovery abuses and citing numerous Second Circuit cases supporting same) (Exhibit H).

Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1365-67 (2nd Cir. 1991) (affirming order establishing a certain claim and precluding the offending party from offering contrary evidence) (quotation marks and citations omitted).

Here, the Ruling as to the still undisclosed information concerning USS's former employees and the historic contamination was clear and unambiguous, and Coastline's and NHT's failure to comply with that Ruling was, and remains, relatively absolute. Simply put, court orders (including repeated court orders) that Coastline and NHT provide certain discovery apparently no longer are sufficient to compel those parties to fulfill their discovery obligations. As the record in this case is replete with literally years of motions by USS to compel Coastline and NHT to provide full discovery, Coastine's and NHT's instant conduct continues an extended practice of unfairly hindering USS's ability to review all underlying, discoverable information in a timely fashion and to fully defend itself against Coastline's claims. See also Saudi v. Valmet-Appleton, Inc., 2003 U.S. Dist. LEXIS 22728, *17 (E.D. Wis. 2003) ("at the heart of Rule 37's automatic sanction provision is the recognition that precious time and resources of both opposing counsel and this Court are wasted when faced with unjustified delay[, and] such waste, when significant enough, constitutes its own kind of harm") (Exhibit I).

In light of the above, the narrowly-tailored relief sought by USS is well within this Court's discretion.

IV.    <u>CONCLUSION</u>.

    For the foregoing reasons, USS's motion should be granted, and USS awarded its reasonable attorneys' fees.

        UNITED STATES STEEL CORPORATION


By: *s/Brian P. Daniels*
    Brian P. Daniels (ct 11863)
    John R. Bashaw (ct 15612)
    BRENNER, SALTZMAN & WALLMAN LLP
    Its Attorneys
    271 Whitney Avenue
    New Haven, CT 06511
    Tel. (203) 772-2600

**CERTIFICATION**

I hereby certify that a true and accurate copy of the foregoing was served via United States first-class mail, postage prepaid, this 18th day of February, 2004 upon:

| | |
|---|---|
| David J. Monz, Esq.<br>Scott N. Koschwitz, Esq.<br>Updike, Kelly and Spellacy, P.C.<br>265 Church Street<br>One Century Tower<br>New Haven, CT  06510<br>Counsel for Plaintiff and for New Haven<br>    Terminal, Inc. | Alan G. Schwartz, Esq.<br>Wiggin & Dana<br>One Century Tower<br>265 Church Street<br>New Haven, CT  06508-1832<br>Counsel for New Haven Terminal, Inc. |
| Joseph P. Williams, Esq.<br>Matthew Ranelli, Esq.<br>Shipman & Goodwin LLP<br>One American Road<br>Hartford, CT  06103-2819<br>Counsel for Waste Management of<br>    Connecticut, Inc. and for<br>    Northeast Waste Systems, Inc. | Ann M. Catino, Esq.<br>Laurie R. Steinberg, Esq.<br>Halloran & Sage LLP<br>225 Asylum Street<br>Hartford, CT  06103-4303<br>Counsel for Blakeslee Arpaia Chapman, Inc. |
| Eric Lukingbeal, Esq.<br>Richard M. Fil, Esq.<br>Robinson & Cole, LLP<br>280 Trumbull Street<br>Hartford, CT  06103-3597<br>Counsel for FPS Harbour Holdings, Inc. | Christopher P. McCormack, Esq.<br>Matthew A. Sokol, Esq.<br>Tyler, Cooper & Alcorn<br>205 Church Street<br>P.O. Box 1936<br>New Haven, CT  06509-1910<br>Counsel for Logistec Connecticut, Inc. |

William Riiska, Esq.
P.O. Box 1340
3 Farnam Road
Lakeville, CT  06039
Counsel for FPS Harbour Holdings, Inc.

            *s/Brian P. Daniels*
            Brian P. Daniels (ct 11863)

791518.doc