UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| COASTLINE TERMINALS OF CONNECTICUT, INC., <br>     Plaintiff, <br><br> v. <br><br> USX CORPORATION, <br>     Defendant, <br><br> v. <br><br> NORTHEAST WASTE SYSTEMS, INC., ET AL: <br>     Third-Party Defendants | : CIVIL ACTION NO. <br> : 300CV01698(WWE) <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : MARCH 9, 2004 <br> : |

**PLAINTIFF, COASTLINE TERMINALS OF CONNECTICUT, INC.'S AND THIRD-PARTY DEFENDANT, NEW HAVEN TERMINAL, INC.'S OBJECTION TO DEFENDANT, UNITED STATES STEEL CORPORATION'S MOTION FOR ORDER**

    Plaintiff, Coastline Terminals of Connecticut, Inc. ("Coastline") and Third-Party Defendant, New Haven Terminal, Inc. ("NHT") hereby object to Defendant, United States Steel Corporation's ("USS") February 18, 2004 Motion for Order as to discovery. As set forth in greater detail below, the vast majority of the information sought by USS through prior discovery requests was previously provided to USS by Coastline and NHT. The remaining information is provided herewith.

**ORAL ARGUMENT REQUESTED**

355579

**I. By Supplementing Its Prior Responses to Discovery, Coastline Has Fully Complied with USS's Request to Disclose Information Concerning Communications with Former USS Employees.**

Section 1 of the Court's Ruling on Pending Discovery Matters signed December 2, 2003 and entered December 12, 2003 (the "Discovery Ruling") required Coastline to provide information regarding contacts with former USS employees. Specifically, Coastline was directed to provide: (1) the identify of former USS employees contacted by Triton Environmental, Inc. ("Triton") and the content of those conversations; (2) any information that was provided by former USS employees to Coastline's counsel that was conveyed to Triton; (3) the name, address, and telephone number of each former employee likely to have discoverable information that Coastline may use to supports its claims and defenses, pursuant to F.R.Civ.P. § 26; (4) the identity of USS employees contacted and the information provided by those former employees useful to the environmental investigation and remediation of the Site with the assurance that no negative repercussions would occur; and (5) Coastline's communications with former USS employees. Significantly, however, unlike Section 2 of the Discovery Ruling (discussed below), which directs Coastline and NHT to provide complete responses to certain interrogatories within ten (10) days of the Discovery Ruling, no specific time for compliance with Section 1 of the Discovery Ruling was provided.

In accordance with the Court's suggestion at the November 12, 2003 discovery calendar, and as memorialized in Section 5 of the Discovery Ruling, the parties scheduled a settlement conference

with United States Magistrate Judge Garfinkel for January 9, 2004. Settlement position memoranda were due on or before December 22, 2003. From November 12, 2003 until January 9, 2004, Coastline diligently prepared for the settlement conference. Despite a full day of negotiations on January 9, 2004, the parties did not settle. The settlement conference was continued before United States Magistrate Judge Garfinkel on February 9, 2004.

As Coastline prepared for the initial January 9, 2004 and supplemental February 9, 2004 settlement conferences, Coastline focused on complying with the provisions of the Discovery Ruling which fixed a deadline for compliance. In Section 2 of the Discovery Ruling, the Court ruled that, within ten days, NHT was to provide complete responses to Interrogatory 1 of USS's Second Set of Discovery Requests, and both NHT and Coastline were to provide complete responses to Interrogatories 2, 3, and 5 of USS's Fourth Set of Discovery Requests dated May 17, 2002. In addition, by December 10, Coastline was to have disclosed Christopher Marchesi as an expert witness, or, in the alternative, produce Mr. Marchesi for a fact deposition during the first week of January 2004.

Although the Court signed the Discovery Ruling on December 2, 2003, the Discovery Ruling was not filed until December 4 and not entered until December 12. Coastline and NHT received notice of the Discovery Ruling on December 15. By then, two explicit deadlines established by the Discovery Ruling had passed. Counsel for Coastline, NHT, and USS agreed that Coastline would

355579                                                    3

produce Mr. Marchesi for a fact deposition during the week of January 26, and that Coastline and NHT would provide additional discovery responses in accordance with section 2 of the Discovery Ruling by December 31.

Accordingly, on December 31, 2003, NHT transmitted supplemental responses to Interrogatory 1 of USS's Second Set of Discovery Requests, and both NHT and Coastline transmitted supplemental responses to Interrogatories 2, 3, and 5 of USS's Fourth Set of Discovery Requests dated May 17, 2002.[1]  The December 31, 2003 supplemental responses of Coastline and NHT are attached hereto as Exhibits A and B, respectively.

At no time since the filing by Coastline and NHT of their December 31, 2003 supplemental responses did counsel for USS object to the breadth or completeness of the supplemental responses or discuss with counsel for Coastline and NHT any issues relating to the supplemental responses in an effort to eliminate or reduce the area of controversy and to arrive at a mutually satisfactory resolution, as required by L.Civ.R. 37(a)(2).  Had counsel for USS contacted counsel for Coastline and NHT prior to filing the instant Motion, the Motion (and the Court's involvement) would have been unnecessary.

---

[1] The parties subsequently rescheduled the fact deposition of Mr. Marchesi to the last week of February, in light of the January 9, 2004 and February 9, 2004 settlement conferences.  After the February 9, 2004 settlement conference failed to yield a settlement, counsel for Coastline began to prepare for the fact deposition of Mr. Marchesi, which counsel for USS conducted on February 26, 2004.

Notwithstanding the foregoing, concurrent with this Objection, Coastline has prepared and transmitted a supplemental discovery response to USS in response to Interrogatory 1 of USS's Discovery Requests to All Other Parties dated March 17, 2003.

Since the issuance of the Discovery Ruling, Coastline has fully intended to provide the required discovery. Coastline's complete compliance with the Discovery Ruling was delayed by Coastline's focus on the prospects of settlement through the January 9, 2004 and February 9, 2004 settlement conferences, the compliance with provisions of the Discovery Ruling for which the Court established an explicit deadline, and the fact deposition of Mr. Marchesi.

## II. Coastline and NHT Have Fully Disclosed Information As to the Historic Environmental Conditions at the Site, Including Those Relating to the Woodchip Pile.

### A. NHT Has Provided a Complete Response to Interrogatory 1 of USS's Second Set of Discovery Responses.

In Section II.A. of USS's Memorandum of Law in Support of Motion for Order, counsel for USS claims that NHT "continues to refuse to disclose the information concerning all historic environmental contamination at the Site."[2] This, however, is not true. Through discovery responses

---

[2] Interrogatory 1 of USS's Second Set of Discovery Requests dated May 7, 2001 provides as follows:

> Identify each natural and non-natural person who was at any time an employee, manager, officer, director, shareholder, attorney, environmental consultant, independent contractor, representative, agent or affiliate of both Coastline Terminals of Connecticut, Inc. ("Coastline") and also New Haven Terminal, Inc. ("NHT"), whether or not at the same time, including but not limited to each person referenced in Paragraph 2.11 of NHT's Second Amended Plan of Reorganization, and for each person

dated March 27, 2002, February 13, 2003, May 28, 2003, June 25, 2003, and December 31, 2003, NHT has provided a complete response to Interrogatory 1 of USS's Second Set of Discovery Requests.

In Coastline's July 11, 2001 response to USS's Second Set of Discovery, counsel for Coastline attached a list of "each natural and non-natural person" affiliated with both NHT and Coastline. In addition, in a letter dated September 15, 2003, counsel for Coastline provided an explanation of the list of "each natural and non-natural person" affiliated with both NHT and Coastline. A copy of the September 15, 2003 letter is attached hereto as Exhibit C.

Based on the argument in USS's Memorandum of Law in Support of Motion for Order, counsel for USS seems to misunderstand NHT's December 31, 2003 supplemental response. In that response, NHT notes that, "[o]ther than conditions remediated by U.S. Steel in 1985 and conditions discussed in the fugitive dust control order issued . . . to NHT," employees of NHT were unaware of the environmental condition of the Site until after the sale to Coastline. Counsel for USS appears to infer from this statement that NHT refuses to disclose information concerning all historic environmental conditions at the Site. This is simply not true. NHT stated that "other than" two conditions already known by U.S. Steel — the 1985 remediation by U.S. Steel and the fugitive dust

---

state each relationship held with Coastline and NHT and the responsibilities associated therewith, the dates during which each such relationship was held, the facts you believe were known to each such person concerning the environmental condition at any time of the real property which is the subject of the instant action, and the date on which you believe such facts became known to such person.

order issued to NHT (concerning which NHT has produced dozens of pages of documents to U.S. Steel, as noted by the Bates numbers listed in the response) — there is no further information to disclose. NHT excluded those conditions from its December 31, 2003 supplemental response because it has already provided all information it has concerning those conditions.

Accordingly, NHT has provided a complete response to Interrogatory 1 through its discovery responses dated March 27, 2002, February 13, 2003, May 28, 2003, June 25, 2003, and December 31, 2003, and this final clarification of the December 31, 2003 response.

> **B.    Coastline and NHT Have Provided a Complete Response to Interrogatories 2, 3, and 5 of USS's Fourth Set of Discovery Responses.**

Through its prior discovery responses, particularly its Third Supplemental Response dated September 15, 2003 to USS's Second Set of Discovery Requests, Coastline has described in detail the historic and current environmental condition of the Site. USS acknowledges, in Section II.B. of the Memorandum of Law in Support of Motion for Order, that Coastline has produced several documents, beginning as early as August 17, 2001, in which the delivery, use, and subsequent analyses of the woodchips are described in detail. See Exhibit F of USS's Memorandum of Law in Support of Motion for Order. In addition, Coastline permitted USS to independently inspect, sample,

and analyze the woodchips in 2003. Accordingly, USS has been fully aware of the history, condition, and nature of the woodchips for over two and one-half years.[3]

Notwithstanding the foregoing, concurrent with this Objection, NHT and Coastline have once again supplemented their prior discovery responses to Interrogatories 2, 3, and 5 of USS's Fourth Set of Discovery Requests.

Accordingly, through their prior responses and supplemental responses, Coastline and NHT have provided complete responses to Interrogatories 2, 3, and 5 of USS's Fourth Set of Discovery Requests.

## III. The Relief Sought by USS Is Neither "Narrowly Tailored" Nor Appropriate.

Counsel for USS has requested as relief: (1) that the Court prohibit Coastline from introducing any evidence as to the former USS employees contacted by Coastline, Triton, or counsel for Coastline; (2) that the Court hold to be established that Coastline and NHT solely are the cause of, and solely are responsible for the costs of the investigation and remediation associated with any and all contamination at the Site under the areas where the woodchips and mulch were stored or spread; and (3) that the Court award USS its attorneys' fees in preparation of its Motion for Order, jointly and

---

[3] In regards to NHT's December 31, 2003 supplemental response, counsel for USS again misinterprets as a refusal to provide discovery NHT's statement that "other than" two conditions known by U.S. Steel, NHT has no further knowledge. USS itself conducted the remediation activities on the Site in 1985 under the Connecticut Department of Environmental Protection order and, through documents produced by NHT, is fully aware of the fugitive dust order issued to NHT. NHT has no further information to disclose.

355579                                    8

severally against Coastline, NHT, and their counsel.  In light of the explanations set forth above in Sections I and II of this Objection and for the reasons set forth below, the relief sought by USS should be denied.

     **A.    Coastline and NHT Have Complied in Good Faith with Discovery Requests and Discovery Orders Issued by the Court, and Have, When Appropriate, Raised Good-faith Arguments to Oppose or Clarify USS's Discovery Requests.**

Through the Motion for Order and supporting Memorandum of Law, counsel for USS attempts to portray Coastline and NHT as flagrantly disregarding USS discovery requests and discovery orders issued by this Court.  The discovery record in this case proves otherwise.  Coastline and NHT have produced nearly 10,000 pages of documents in response to USS's series of discovery requests.  In accordance with the Federal Rules of Civil Procedure, Coastline and NHT have also raised good-faith claims of privilege and work product when appropriate, and good-faith objections to discovery requests when the relevance, scope, intent, or meaning of the various requests were unclear or overbroad.  When discovery disputes have been resolved by the Court, Coastline and NHT have made good-faith efforts to comply with discovery orders issued by the Court.  In consideration of the good-faith compliance of Coastline and NHT with USS discovery requests and discovery orders of the Court, and the lack of any prejudice to USS, the relief requested by counsel for USS is inappropriate and overbroad.

### 1.  USS's First Request for Relief

Counsel for USS first requests the Court prohibit Coastline from introducing any evidence as to the former USS employees contacted by Coastline, Triton, or counsel for Coastline. Such a sanction is inappropriate, particularly In light of the dearth of information produced by USS concerning its waste handling and disposal practices at the Site. On or about August 17, 2001, Coastline produced a comprehensive list of USS employees with the continuous service dates for each. See Bates Nos. TR 02149 to 02160, attached as Exhibit D. All prior employees contacted are included on this list. Also, the identity of William O'Neill, along with a copy of Triton's interview notes, was provided to counsel for USS on August 17, 2001. Moreover, in the event Coastline (and/or NHT) interview additional past employees of USS, it will supplement its responses to discovery.

### 2.  USS's Second Request for Relief

Counsel for USS next requests that the Court hold to be established that Coastline and NHT solely are the cause of, and solely are responsible for the costs of the investigation and remediation associated with any and all contamination at the Site under the areas where the woodchips and mulch were stored or spread. However, this request for relief is also inappropriate and overbroad. Through their prior responses to discovery, Coastline and NHT have produced various documents, beginning as early as August 2001, concerning the delivery, use, and subsequent analyses of the woodchips. In

addition, Coastline has permitted USS to independently inspect, sample, and analyze the woodchips. Coastline and NHT have also provided several sworn statements of David Shuda and Robert Karecki regarding the placement and movement of the woodchips on the Site.  Accordingly, Coastline and NHT, to the best of their abilities, have provided as much documentary and textual information concerning the woodchips as possible.

Given Coastline's and NHT's good-faith compliance, which was complemented by the fact that no analyses of the woodchips existed until 1998 (nearly two years after Coastline purchased the Site and after the woodchips had been moved to their current location). The relief sought by USS is inappropriate.

### 3. USS's Third Request for Relief

Finally, counsel for USS has requested that the Court award USS its attorneys' fees in preparation of its Motion for Order, jointly and severally against Coastline, NHT, and their counsel. Such request is inappropriate and overbroad.

First, as demonstrated above, Coastline and NHT have responded to USS's discovery requests in good faith and in accordance with the Federal Rules of Civil Procedure.  Coastline and NHT have produced nearly 10,000 documents to USS, and, when appropriate, raised good-faith claims of privilege and work product, and good-faith objections to discovery requests.  Coastline and NHT

have also complied in good faith with discovery orders issued by the Court, when Court intervention was necessary to resolve discovery disputed with USS.

Second, counsel for USS incurred the cost of the instant Motion unnecessarily. L.Civ.R. 37(a)(2) requires that, before filing a Motion for Order, counsel confer with opposing counsel "in a good-faith effort to eliminate or reduce the area of controversy, and to arrive at a mutually satisfactory resolution." In addition, L.Civ.R. 37(a)(2) requires the filing with the Motion for Order of an affidavit certifying that he has conferred with opposing counsel and has made such good-faith effort. At no time since the filing by Coastline and NHT of their December 31, 2003 supplemental responses did counsel for USS object to the breadth or completeness of the supplemental responses or discuss with counsel for Coastline and NHT any issues relating to the supplemental responses in an effort to eliminate or reduce the area of controversy and to arrive at a mutually satisfactory resolution, as required by L.Civ.R. 37(a)(2). Such a conference would have obviated the need for counsel for USS's Motion for Order and the Court's involvement. USS is therefore not entitled to any attorneys' fees.

Accordingly, Coastline and NHT request that USS's Motion for Order be denied and this Objection sustained.

>Respectfully submitted,
>THE PLAINTIFF,
>COASTLINE TERMINALS OF
>CONNECTICUT, INC.
>
>By:_____
>    DAVID J. MONZ, ESQ.
>    Federal Bar Number:  ct07061
>    SCOTT N. KOSCHWITZ, ESQ.
>    Federal Bar Number:  ct23684
>    Updike, Kelly & Spellacy, P.C.
>    One Century Tower
>    265 Church Street, 10th Floor
>    New Haven, Connecticut  06510
>    Telephone Number:  (203) 786-8300

                THIRD-PARTY DEFENDANT,
                NEW HAVEN TERMINAL, INC.


By:_____
    DAVID J. MONZ, ESQ.
    Federal Bar Number:  ct07061
    SCOTT N. KOSCHWITZ, ESQ.
    Federal Bar Number ct23684
    Updike, Kelly & Spellacy, P.C.
    One Century Tower
    265 Church Street, 10th Floor
    New Haven, Connecticut  06510
    Telephone Number:  (203) 786-8300

## **CERTIFICATION**

THIS IS TO CERTIFY that a copy of the foregoing has been mailed, postage prepaid, this 9th day of March, 2004 to the following counsel of record:

Brian P. Daniels, Esq.  
John R. Bashaw, Esq.  
Michelle Goglia, Esq.  
Brenner, Saltzman & Wallman, LLP  
271 Whitney Avenue  
P.O. Box 1746  
New Haven, Connecticut 06507-1746  

Ann M. Catino, Esq.  
Lori M. Dibella, Esq.  
Halloran & Sage LLP  
225 Asylum Street  
Hartford, Connecticut 06106  

Joseph P. Williams, Esq.  
Matthew Ranelli, Esq.  
Shipman & Goodwin LLP  
One American Row  
Hartford, Connecticut 06103-2819  

Eric Lukingbeal, Esq.  
Richard Fil, Esq.  
Robinson & Cole, LLP  
280 Trumbull Street  
Hartford, Connecticut 06103-3597  

Alan G. Schwartz, Esq.  
Wiggin & Dana  
One Century Tower  
265 Church Street  
New Haven, Connecticut 06508-1832  

Christopher P. McCormack, Esq.  
Matthew A. Sokol, Esq.  
Tyler, Cooper & Alcorn  
205 Church Street, P.O. Box 1936  
New Haven, Connecticut 06509-1910  

William Riiska, Esq.  
P.O. Box 1340  
3 Farnam Road  
Lakeville, CT 06039  

 

_____  
SCOTT N. KOSCHWITZ, ESQ.  
UPDIKE, KELLY & SPELLACY, P.C.