UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| COASTLINE TERMINALS OF CONNECTICUT, INC.,<br>    Plaintiff, | CIVIL ACTION NO.<br>300CV01698(WWE) |
| v. | |
| U.S. STEEL CORPORATION,<br>    Defendant, | |
| v. | |
| NORTHEAST WASTE SYSTEMS, INC., ET AL<br>    Third-Party Defendants | JULY 20, 2004 |

## MOTION OF THIRD-PARTY DEFENDANT NEW HAVEN TERMINAL, INC. TO COMPEL DEFENDANT/THIRD-PARTY PLAINTIFF UNITED STATES STEEL CORPORATION TO COMPLY WITH ITS SECOND SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION

Third-party Defendant New Haven Terminal, Inc. ("NHT") respectfully files this motion to compel Defendant/Third-party Plaintiff, United States Steel Corporation ("USS") (f/k/a USX Corporation), to comply with its Second Set of Interrogatories and Requests for Production dated May 24, 2004 (the "Second Set").

**ORAL ARGUMENT REQUESTED**

368623

On or about June 22, 2004, USS responded to the Second Set by objecting to all three interrogatories and two of the four requests for production propounded.  On July 14, 2004, the undersigned in good faith conferred with counsel for USS in an effort to resolve the discovery dispute without court intervention, but was unsuccessful.

As stated in greater detail in the accompanying memorandum of law, USS is obligated to provide the discovery requested through the Second Set.  Accordingly, NHT respectfully requests that the Court order USS to comply with the Second Set.

Respectfully submitted,

THIRD-PARTY DEFENDANT,
NEW HAVEN TERMINAL, INC.

BY:_____
    DAVID J. MONZ, ESQ.
    Federal Bar Number ct07061
    SCOTT N. KOSCHWITZ, ESQ.
    Federal Bar Number ct23684
    UPDIKE, KELLY & SPELLACY, P.C.
    265 Church Street, 10th Floor
    One Century Tower
    New Haven, Connecticut  06510
    Telephone No.:  (203) 786-8300
    Facsimile No.:  (203) 772-2037

## **CERTIFICATION**

THIS IS TO CERTIFY that a copy of the foregoing has been mailed, postage prepaid, this

20th day of July, 2004 to the following counsel of record:

Brian P. Daniels, Esq.
John R. Bashaw, Esq.
Brenner, Saltzman & Wallman, LLP
271 Whitney Avenue
P.O. Box 1746
New Haven, Connecticut 06507-1746

Ann M. Catino, Esq.
Thomas C. Blatchley
Halloran & Sage LLP
225 Asylum Street
Hartford, Connecticut 06106

Alan G. Schwartz, Esq.
Wiggin & Dana
One Century Tower
265 Church Street
New Haven, Connecticut 06508-1832

Christopher P. McCormack, Esq.
Matthew A. Sokol, Esq.
Tyler, Cooper & Alcorn
205 Church Street, P.O. Box 1936
New Haven, Connecticut 06509-1910

SCOTT N. KOSCHWITZ, ESQ.
UPDIKE, KELLY & SPELLACY, P.C.

368623                              3

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| COASTLINE TERMINALS OF CONNECTICUT, INC.,<br>　　　　Plaintiff, | CIVIL ACTION NO.<br>300CV01698(WWE) |
| v. | |
| U.S. STEEL CORPORATION,<br>　　　　Defendant, | |
| v. | |
| NORTHEAST WASTE SYSTEMS, INC., ET AL<br>　　　　Third-Party Defendants | JULY 20, 2004 |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION OF THIRD-PARTY DEFENDANT NEW HAVEN TERMINAL, INC.
## TO COMPEL DEFENDANT/THIRD-PARTY PLAINTIFF UNITED STATES STEEL
## CORPORATION TO COMPLY WITH ITS SECOND SET OF INTERROGATORIES AND
## REQUESTS FOR PRODUCTION

Third-party Defendant New Haven Terminal, Inc. ("NHT") respectfully files this

memorandum of law in support of its motion to compel Defendant/Third-party Plaintiff, United

States Steel Corporation ("USS") (f/k/a USX Corporation), to comply with its Second Set of

368659

Interrogatories and Requests for Production of Documents and Tangible Items dated May 24, 2004 (the "Second Set").

## **BACKGROUND**

Coastline Terminals of Connecticut, Inc. ("Coastline") instituted this action against USS for the recovery of, among other costs, the response costs expended and to be expended by Coastline in remediating the environmental contamination at 238 Fairmont Avenue in New Haven, Connecticut (the "Site"), where USS conducted wire drawing and manufacturing operations for nearly eighty years. Coastline brought its action pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq., as amended by the Superfund Amendments and Reauthorization Act of 1986, Pub.L. 99-499. In response, USS initiated a contribution action against NHT and six other third-party defendants, alleging that each was responsible for a portion of the contamination at the Site.

On or about June 16, 2003, NHT served upon USS its First Set of Interrogatories and Requests for Production of Documents (the "First Set"), which included eleven interrogatories and twelve requests for production. On or about May 24, 2004, NHT propounded an additional three interrogatories and four requests for production to USS through its Second Set.

On or about June 22, 2004, USS responded to the Second Set by objecting to all three interrogatories and two of the four requests for production propounded.  USS's objections are attached hereto as Exhibit A.

USS has raised the general objection that the three interrogatories propounded through NHT's Second Set exceed *Coastline's* twenty-five interrogatory limit.  USS claims that "[t]hese interrogatories, while nominally served on behalf of NHT, in fact were served on behalf of [Coastline] as a result of the apparently improper, common representation of both NHT and also Coastline by the law firm of Updike, Kelly & Spellacy, P.C."  USS raises a further objection to Interrogatory 3: that the parties had agreed that discovery requests would not seek annual quantities of materials that are the subject of the discovery requests.

Through Request for Production (Documents) No. 2, NHT seeks the original map entitled "American Steel & Wire Company New Haven Works New Haven Connecticut General Plan."  NHT previously received a photocopy of the map, the detail of which is difficult to discern.  NHT seeks the original or, if the original is unavailable, the next-best copy.

In response to Requests for Production (Tangible Items) Nos. 1 and 2, which seek physical samples of USS material, USS objects on the basis that the Court's December 2, 2003 order denied discovery regarding other sites of USS until all fact discovery and fact depositions were complete.  USS argues that, if its objection is overruled, Coastline and any of its expert witnesses should be

precluded from relying on any information received in response to the interrogatories. USS raises the further objection that "Coastline [sic] has the ability, during its investigation and remediation activities, to collect samples of whatever materials actually are present at the Site."

As demonstrated below, NHT is entitled to the discovery requested through the Second Set. Accordingly, the Court should grant this Motion to Compel in its entirety.

## ANALYSIS

Before making a motion to compel discovery, the moving party must in good faith confer with its adversary. Fed. R. Civ. P. 37(a)(2)(B); Yoon v. Celebrity Cruises, Inc., 1999 U.S. Dist. LEXIS 2779, *17 (S.D.N.Y. 1999) (attached hereto as Exhibit B). This "meet and confer" requirement mandates that the parties meet, in person or by telephone, and make a genuine effort to resolve the dispute by determining what the requesting party is actually seeking, what the discovering party is reasonably capable of producing that is responsive to the request, and what specific issues, if any, cannot be resolved without judicial intervention. Id. As stated in the Certification attached as Exhibit C, counsel for NHT conferred with counsel for USS by telephone in an attempt to resolve the discovery dispute, without success.

## 1.    NHT Seeks Relevant and Discoverable Information

The responses to interrogatories, documents, and samples sought by NHT are relevant and discoverable. See Fed. R. Civ. P. 26(b)(1) (2004); Fed. R. Evid. 401 (2004). According to Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things." Fed. R. Civ. P. 26(b)(1) (2004). Fed. R. Evid. 401 defines "[r]elevant evidence" as "evidence having any tendency to make the existence of any fact that is of any consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (2004). All material sought through the Second Set is clearly relevant.

USS has filed a contribution action against NHT and six other third-party defendants, claiming that they are responsible, at least in part, for the contamination on the Site. In its defense, NHT seeks to demonstrate that USS, not NHT, caused the existing site contamination. Therefore, the discovery requested by NHT is relevant because it has the tendency to make the existence of the fact of most consequence — which party is responsible for the contamination — more or less probable. In addition, the requested discovery is discoverable pursuant to Fed. R. Civ. P. 26(b)(1) because it concerns non-privileged matters that are relevant to NHT's defense against USS's contribution claim.

## II.     NHT Is Not Subject to Limitations on Discovery by Coastline

### A.     NHT Is Not Subject to Limitations on Discovery by Coastline

USS claims that NHT's interrogatories were in fact served on behalf of Coastline, and that, since Coastline has previously served twenty-five interrogatories upon USS, such interrogatories exceed the limit imposed by Fed. R. Civ. P. 33(a).

As discussed above, NHT propounded the interrogatories to gather evidence in its defense of USS's contribution claim. The discovery that NHT has requested is both discoverable and relevant to NHT's defense that USS, not NHT, is responsible for the contamination found on the Site.

### B.     The Other Parties Are Not Precluded from Relying on Such Discovery

USS argues that, if the Court overrules its initial objection, that the Court should order that Coastline and any of its expert witnesses to be disclosed, should be precluded from relying on any information received in response to the interrogatories. USS, however, cites no authority for such an order of preclusion. Moreover, a court order precluding the use of information rightfully obtained through discovery is contrary to the open nature of federal discovery, the intent of which is to allow for the discovery of all information relevant to the resolution to the claims and defenses at issue. "The deposition-discovery regime set out by the Federal Rules of Civil Procedure is an extremely permissive one to which courts have long accorded a broad and liberal treatment to effectuate their purpose that civil trials in the federal courts [need not] be carried on in the dark." Schlagenhauf v.

Holder, 379 U.S. 104, 114-15 (1964) (quoting Hickman v. Taylor, 329 U.S. 495, 501 (1947) (internal quotation marks omitted)).  In fact, Fed. R. Civ. P. 26(b)(1) envisions that parties may obtain discovery related to matters beyond their own claims and defenses.  Fed. R. Civ. P. 26(b)(1) explicitly provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."  Fed. R. Civ. P. 26(b)(1) (2004) (emphasis added).  Accordingly, this Court should not in any way limit the use of the discovery sought by NHT though its Second Set.

### III.    USS Claim of Privilege

Request for Production (Documents) No. 1 requires the production of documents concerning communications between current employees and representatives of USS and former USS employees concerning the Site and USS's operations at the Site.

In response to Request for Production (Documents) No. 1, USS states "[o]ther than privileged or protected documents as to which no privilege log is required, no such documents exist."  Contrary to this assertion, it appears that, if any responsive documents exist, a privilege log is required.

L.Civ.R. 37(a)(1) requires the generation of a privilege log "when a claim of privilege of work product protection is asserted in response to a discovery request for documents."  The only exceptions to this rule are: (1) written communications between a party and its trial counsel after the

368659                                    7

commencement of the action, and (2) work product material created after commencement of the

action. Through Request for Production (Documents) No. 1, NHT requests documents regarding

communications between employees or representatives of USS and former USS employees

concerning the Site or Site operations. Documents responsive to this request are not encompassed by

the limited exemption from the requirement to maintain a privilege log. Accordingly, NHT requests

a copy of the privilege log for such documents.


IV.     **NHT Seeks Map in USS Possession**

Through Request for Production (Documents) No. 2, NHT seeks the original map entitled

"American Steel & Wire Company New Haven Works New Haven Connecticut General Plan." NHT

previously received a copy of the map, the detail of which is difficult to discern.

Even before the filing of the Second Set, counsel for NHT, through telephone conferences

with counsel for USS, requested the original map. If the original was unavailable, counsel for NHT

requested the next-best copy. Counsel for USS has not objected to the request, and as of the most

recent telephone conference concerning the map on July 14, agreed to produce the next-best copy in

the possession of USS. The map has not been produced as of the filing of this Motion. Should USS

produce the next-best copy of the map before the Court's hearing of this Motion, counsel for NHT

agrees to so limit its Motion.  In the event that USS does not produce the map prior to the hearing, this Court should compel production of the map.

V.   **The Court's "Other Sites" Discovery Ruling Does Not Preclude the Production of Requested Samples**

Through Requests for Production (Tangible Items) Nos. 1 and 2, NHT requests physical samples of zinc tailings, pea coal, by-product or waste material from the patenting or galvanizing processes, zinc ash, zinc dross, lead ash, wire drawing soap powders, and ash and cinders (from current or historic coal-fired boilers).  USS, in various discovery responses, previously identified these materials as having been generated by the manufacturing processes it conducted on site. Nevertheless, USS objects to these requests, arguing that the Court's December 2, 2003 order concerning "other sites" discovery prohibits such requests until all fact discovery and fact depositions are complete.  Such an objection is misplaced.

Through its First Set, NHT requested that USS "identify all facilities currently or formerly owned or operated by you that conducted wire rope manufacturing operations, wire drawing operations, patenting operations, wire stranding operations and/or galvanizing operations at any time in the United States."  Through Interrogatory Nos. 3 through 11, NHT requested comprehensive information concerning such facilities, including:

9

(1)     A description of processes conducted, the dates when such processes were conducted, a description of the equipment used in each process;

(2)     A list of all materials used in the process at each facility, including raw materials, components, any process intermediates or byproducts reused in the process, and materials used to maintain any machinery involved in the process;

(3)     The volume of the material purchased annually for use at each facility or, as to process intermediates or byproducts reused in the process, the volume reused annually at each facility;

(4)     Identification of all waste materials and/or recyclable materials generated, including, but not limited to, waste materials or recyclable materials containing lead, zinc, arsenic, other metals, slag, dross, wire scale, fly ash, pea coal or cinders;

(5)     For each of the types of wastes and/or recyclable materials generated, the volume of waste generated annually at each facility;

(6)     For each of the types of wastes and recyclable materials generated, the volume of waste disposed of annually from each facility;

(7)     For each of the types of wastes and recyclable materials generated, a description of the method of disposal used at each facility or in the case of recycled materials, the method of use of reuse or recycling;

(8)    For each facility, confirmation whether any fill material of any type was placed or added to all or any portion of the facility during the period of your ownership and/or operation; and

(9)    For each facility where fill was placed or added, the area filled and the nature and source of material used as fill.

In addition, NHT requested all documents related to USS's response to Interrogatories 2 through 11.

Through its August 18, 2003 discovery ruling, the Court ordered USS to determine how many sites manufactured wire rope through a process similar to that used at the Site, the location of such sites, when such sites manufactured wire rope, and any other distinguishing characteristics. In response to that discovery ruling, USS identified twenty-eight such other sites.

On or about September 4, 2003, USS served its Third Set of Discovery Requests to All Other Parties, in which USS requested near-identical information concerning the other sites of the third-party defendants, including NHT.

On November 12, 2003, the Court heard oral argument concerning the pending "other sites" discovery requests of the parties, among other discovery issues. On December 2, 2003, the Court issued its ruling, in which it denied without prejudice all requests for other sites information pending the completion of fact discovery, including the deposition of fact witnesses. The ruling further provided that "[a]ny renewal of this request for 'other site' discovery must be accompanied by a

proffer that the party has exhausted all efforts to gain information on the New Haven site, and that USS has either provided inaccurate or insufficient information."

NHT's request for USS other sites information encompassed all USS facilities that conducted wire-drawing operation using a process similar to that used at the Site. The request sought information that would entail extensive compilation, review, and production of documents, presumably from numerous USS facilities across the United States, in addition to its Pittsburgh, Pennsylvania headquarters. The Court's December 2, 2003 discovery ruling suspended that request pending the exhaustion of all other means of obtaining information concerning the New Haven Works.

In contrast to the Requests for Production of the First Set, Requests for Production (Tangible Items) Nos. 1 and 2 are narrowly tailored, and simply request a physical sample of eight materials (identified as having been generated on the New Haven site) from any USS facility that currently or historically performed wire-drawing operation using a process similar to that used at the Site.

Significantly, Requests for Production (Tangible Items) Nos. 1 and 2 are not contrary to the Court's December 2, 2003 discovery ruling, but are consistent with it. Through prior interrogatories and discovery requests specifically concerning the Site, USS has produced very little written documentation of site activity, claiming that the vast majority of the documents requested by the parties had been destroyed in accordance with USS's document destruction policy. Counsel for USS

has indicated that USS has produced all documentary evidence responsive to such interrogatories and requests for production.  Conspicuously absent from documents produced to date is significant evidence concerning the wastes and by-products generated at the Site, and the means of disposal of such wastes and by-products.  In addition, USS has provided an insufficient response to interrogatories and requests for production concerning USS's waste generation and disposal practices on site.  For example, internal USS documents (Bates stamp numbers 094519 through 094522), indicated that the New Haven Works operations yielded significant quantities of zinc dross, zinc ashes, and lead ashes as waste annually.  However, USS failed to include such substances in responses to interrogatories that request a list of all materials generated at the Site, and that specifically identify wire, slag, dross, wire scale, fly ash, and cinders.

Through its request for physical samples of the eight materials, NHT is attempting to exhaust all efforts to gain information concerning the Site, before seeking information concerning USS other sites.  Although NHT believes that the environmental investigation of the Site has established a clear connection between the site-wide contamination and the historical manufacturing processes conducted by USS, such connection can be decisively buttressed by comparing the requested physical samples (both visually and chemically) with the materials found on site.  Significantly, given the narrow scope of the production requests, the production of the requested materials is of minimal burden and cost to USS, and may well obviate the need for significant additional fact discovery.

Finally, USS raises the further objection that "Coastline [sic] has the ability, during its investigation and remediation activities, to collect samples of whatever materials actually are present at the Site." Although this may be an accurate statement of fact, it is neither a relevant nor valid objection to the requested information.

## CONCLUSION

For all the foregoing reasons, NHT's Motion to Compel should be granted in its entirety.

Respectfully submitted,

THIRD-PARTY DEFENDANT,
NEW HAVEN TERMINAL, INC.

By: _____
    DAVID J. MONZ, ESQ.
    Federal Bar Number ct07061
    SCOTT N. KOSCHWITZ, ESQ.
    Federal Bar Number ct23684
    UPDIKE, KELLY & SPELLACY, P.C.
    265 Church Street, 10th Floor
    One Century Tower
    New Haven, Connecticut 06510
    Telephone No.: (203) 786-8300
    Facsimile No.: (203) 772-2037

368659                                    14

## **CERTIFICATION**

THIS IS TO CERTIFY that a copy of the foregoing has been mailed, postage prepaid, this

20th day of July, 2004 to the following counsel of record:

Brian P. Daniels, Esq.
John R. Bashaw, Esq.
Brenner, Saltzman & Wallman, LLP
271 Whitney Avenue
P.O. Box 1746
New Haven, Connecticut 06507-1746

Ann M. Catino, Esq.
Thomas C. Blatchley
Halloran & Sage LLP
225 Asylum Street
Hartford, Connecticut 06106

Alan G. Schwartz, Esq.
Wiggin & Dana
One Century Tower
265 Church Street
New Haven, Connecticut 06508-1832

Christopher P. McCormack, Esq.
Matthew A. Sokol, Esq.
Tyler, Cooper & Alcorn
205 Church Street, P.O. Box 1936
New Haven, Connecticut 06509-1910


SCOTT N. KOSCHWITZ, ESQ.
UPDIKE, KELLY & SPELLACY, P.C.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COASTLINE TERMINALS OF CONNECTICUT, INC., Plaintiff, | : : : : | |
| v. | : : | CASE NO. 3:00CV1698 (WWE) |
| USS CORPORATION, Defendant/Third-Party Plaintiff, | : : : : | |
| v. | : : | |
| NORTHEAST WASTE SYSTEMS, INC., WASTE MANAGEMENT OF CONNECTICUT, INC., FPS HARBOUR HOLDINGS, INC., BLAKESLEE ARPAIA CHAPMAN, INC., WHITE OAK CORPORATION, NEW HAVEN TERMINAL, INC., and LOGISTEC CONNECTICUT, INC., | : : : : : : : : : : | JUNE 22, 2004 |
| Third-Party Defendants. | : : | |

**UNITED STATES STEEL CORPORATION'S RESPONSES TO
NEW HAVEN TERMINAL, INC.'S SECOND SET OF DISCOVERY REQUESTS**

United States Steel Corporation ("USS") hereby responds to New Haven Terminal, Inc.'s

("NHT") second set of discovery requests dated May 24, 2004 as follows:

**DEFINITIONS AND INSTRUCTIONS**

1.      If you claim any interrogatory or request for production calls for material or

information within the scope of the attorney-client privilege or prepared in anticipation of

litigation or for trial, then, with respect to such material or information, identify all persons to whom the communication was made, and respond in full with respect to other information or material called for by the interrogatory or request for production that is not claimed to be protected by a privilege.

**OBJECTION:** USS objects to this instruction to the extent it imposes greater obligations upon USS than Local Rule 37. Subject to, but without waiving, the foregoing Objection, USS states that the only documents withheld on privilege grounds are comprised of written communications between USS and its trial counsel after commencement of the action and work-product material created after commencement of the action.

4.    As used in these interrogatories and requests for production, the term "document" includes all originals (or copies where originals are unavailable) and non-identical copies, including partial and preliminary drafts or versions of all written, recorded, or graphic matter, however produced or reproduced, or correspondence, telegrams, or sound recordings of any type of conversation, meeting, or conference, minutes of meetings, memoranda, interoffice communications, analyses, reports, summaries and results of investigations and tests, reviews, contracts, proposals, agreements, working papers, binders, insurance policies, bonds, statistical records, ledgers, books of account, invoices, receipts, computer data, electronic mail, stenographers, notebooks, daily or weekly logs, payroll data, work assignment data, schedules, budgets, cash flow analyses, manuals, directives, bulletins, desk calendars, appointment books, diaries, photographs, drawings or other graphic representations, plans, specifications, shop drawings, calculations, logs, investigator's reports, or papers similar to any of the foregoing, however labeled.

**OBJECTION:** USS objects to this definition to the extent it is broader than the definition of the term "document" set forth within Local Rule 26.

7.    The terms "refer to," "relate to," and "reflect" mean constituting, comprising, containing, setting forth, showing, disclosing, describing, explaining, summarizing, mentioning, concerning, and/or pertaining to.

**OBJECTION:** USS objects to this definition to the extent it is broader than the definition of the term "concerning" set forth within Local Rule 26.

8.    The term "identify" means to indicate the specific location, contents, and source of any documents that come within the particular category, sufficient to enable a person of reasonable intelligence to locate the document and determine its relevance to the matter at issue. With respect to a person, "identify" means to provide the person's name, title or position, business and home addresses and telephone numbers (or his or her last known business and home addresses and telephone numbers). With respect to a corporation or other entity, "identify" means to provide the entity's name, business address and telephone number, principals, date of incorporation or registration (if applicable), date of dissolution (if applicable), the entity's current status (existing, defunct, etc.), the entity's parent or subsidiaries (if applicable), and, if the entity no longer exists, the name of any successor entities.

**OBJECTION:** USS objects to this definition to the extent it imposes greater obligations on USS than the definition of the term "identify" (with respect to both persons and documents) set forth in Local Rule 26.

12.    "Waste" refers to any solid, liquid or gaseous matter that has been discarded, disposed of, abandoned, or otherwise determined to be no longer useable, as well as non-recyclable or non-reusable byproducts of production processes.

**OBJECTION:** USS objects to this definition as ambiguous and unduly burdensome on the grounds that this definition, when read literally, would even cover, for example, food products discarded with respect to any meals consumed on the Site.

13. "Dispose" and "disposal" refer to acts of discarding, disposing or abandoning material or placing material on or in the ground.

**OBJECTION:** See Objections to definitions of "waste" and "material".

14. "Material" refers to any solid, liquid or gaseous matter.

**OBJECTION:** USS objects to this definition on the grounds that it is unduly burdensome and irrelevant to the extent it includes substances which do not form the basis of Coastline's current claims. See also Objection to definition of "waste".

15. If information requested is not reasonably available in the precise manner requested or for a particular period specified, but can be supplied partially, in modified form or for a different but relevant date or period, set forth the best and most complete information available along with the reasons that the information may not be completely responsive to the request, together with the identity of any documents, individual or other source from which or from whom more complete information is available or obtainable.

**OBJECTION:** USS objects to this instruction on the grounds that it is unduly burdensome, ambiguous, and not permitted by the rules of discovery. By means of this instruction, HNT appears to be instructing USS to ask itself discovery requests to the extent that NHT has served a different discovery request seeking information neither known by USS nor reasonably available to USS in the precise manner requested or for the particular period specified by NHT.

4

16.    Unless otherwise indicated, these interrogatories and requests for documents relate to the time period from when you first held an ownership interest in, or operated a business on, the Site, or any portion thereof, to the present, including, but not limited to, the period from 1907 to the present.

**OBJECTION:**  USS objects to this instruction to the extent it seeks an implied admission of any kind.

18.    If any document is withheld by you under claim of privilege, please furnish a list identifying each document as to which privilege is claimed, together with the following information with respect to each document: date, author, recipient, number of pages, subject matter, the nature of the privilege claimed, the person to whom such copies were furnished and the employer and job title of such person.

**OBJECTION:**  See Objection to Instruction 1.

19.    If any document has been lost or destroyed, the document so lost or destroyed shall be identified by date, author, subject matter, date of loss or destruction, identity or person(s) responsible for such loss or destruction and, if destroyed, the reason for such destruction.

**OBJECTION:**  USS objects to this instruction as unduly burdensome and seeking the disclosure of irrelevant information, especially in light of the fact that the purported time frame governed by NHT's discovery requests is approximately 97 years.

## INTERROGATORIES

1.    Please identify and describe the specific type(s) of coal-fired boiler(s) referred to in USS's May 31, 2002 Supplemental Responses to Coastline's First Set of Interrogatories and Requests for Production.

**OBJECTION:** USS objects to these interrogatories as exceeding the federal twenty-five interrogatory limit. These interrogatories, while nominally served on behalf of NHT, in fact were served on behalf of Plaintiff Coastline Terminals of Connecticut, Inc. ("Coastline") as a result of the apparently improper, common representation of both NHT and also Coastline by the law firm of Updike, Kelly & Spellacy, P.C. ("UKS"). To the extent this objection is overruled based on any contention by UKS that the discovery requests actually were served only by NHT, USS requests that any such ruling also preclude Coastline (including any expert witnesses to be disclosed by Coastline) from relying on any of the information responsive to the instant interrogatories.

2.     For each boiler identified in response to Interrogatory 1, describe where it was located on the Site.

**OBJECTION:** See Objection to Interrogatory 1.

3.     Please identify the source(s) and annual amount of the coal used in the boilers referred to in USS's May 31, 2002 Supplemental Responses to Coastline's First Set of Interrogatories and Requests for Production.

**OBJECTION:** See Objection to Interrogatory 1. USS further objects to this Interrogatory on the grounds that the parties agreed on April 11, 2002, as a discovery compromise, that none of the parties would be required to state annual quantities.

## REQUESTS FOR PRODUCTION (DOCUMENTS)

1.     Any and all documents regarding any contacts or communications, oral or written (including facsimiles, notes of telephone conversations and electronic communications) from January 1, 1999 to the present, between any employees and/or representatives of USS and any former employees of USS concerning the Site and/or USS's operations at the Site.

**ANSWER:** Other than privileged or protected documents as to which no privilege log is required, no such documents exist.

2.    The original map entitled "American Steel & Wire Company New Haven Works New Haven Connecticut General Plan," a copy of which was previously produced and is attached hereto as Exhibit A.

**ANSWER:** Despite a diligent search for same, USS has been unable to locate an original of the attached map.

## REQUESTS FOR PRODUCTION (TANGIBLE ITEMS)

1.    Physical samples of the following materials (including documentation of the place of origin) from any USS facility, domestic or foreign, that currently performs or historically performed wire-drawing operations similar to those performed at the Site:

a)    "zinc tailings" (referred to in USS's May 31, 2002 Supplemental Responses to Coastline's First Set of Interrogatories and Requests for Production);

b)    "pea coal" ash from the patenting process (referred to in USS's May 31, 2002 Supplemental Responses to Coastline's First Set of Interrogatories and Requests for Production);

c)    any by-product or waste material, including any material suitable for recycling or reuse, from either the patenting process or galvanizing process (referred to ins USS's May 31, 2002 Supplemental Responses to Coastline's First Set of Interrogatories and Requests for Production);

d)    "zinc ash" (referred to on the Commercial and Industrial Solid Waste Survey (USS Bates ##094520 – 094522);

e)      "zinc dross" (referred to on the Commercial and Industrial Solid Waste Survey (USS Bates ##094520 – 094522);

f)      "lead ash" (referred to on the Commercial and Industrial Solid Waste Survey (USS Bates ##094520 – 094522);

g)      "wire drawing soap powders" (referred to on the Commercial and Industrial Solid Waste Survey (USS Bates ##094520 – 094522).

**OBJECTION:**  By order dated December 2, 2003, this Court (Fitzsimmons, U.S.M.J.) denied all requests for "other site" discovery without prejudice to renewal at the completion of all fact discovery and completion of all fact depositions of former USS employees and all other fact witnesses.  USS objects to this request based upon the issuance of that order and for all of the reasons for which USS originally objected to Coastline's and NHT's attempts to obtain "other site" discovery.  USS further objects to this request on the grounds that Coastline has the ability, during its investigation and remediation activities, to collect samples of whatever materials actually are present at the Site and which allegedly form the basis of Coastline's current cost recovery claims.

2.      Physical samples of the following materials (including documentation of the place of origin) from any USS facility, domestic or foreign, that currently uses or historically used coal-fired boilers:

(a)      "ash and cinders" from the use of coal to fire the boilers (referred to in USS's May 31, 2002 Supplemental Responses to Coastline's First Set of Interrogatories and Requests for Production).

**OBJECTION:**  See Objection to Request 1.

8

UNITED STATES STEEL CORPORATION

By: _____
      Brian P. Daniels (ct11863)
      John R. Bashaw (ct15612)
      BRENNER, SALTZMAN & WALLMAN LLP
      Its Attorneys
      271 Whitney Avenue
      P.O. Box 1746
      New Haven, CT 06507-1746
      Tel. (203) 772-2600


## **CERTIFICATION**

I hereby certify that a true and accurate copy of the foregoing was served via United

States first-class mail, postage prepaid, this 22nd day of June, 2004 upon:


David J. Monz, Esq.
Scott N. Koschwitz, Esq.
Richard M. Dighello, Jr., Esq.
Updike, Kelly and Spellacy, P.C.
265 Church Street
New Haven, CT  06510
Counsel for Plaintiff and for New Haven
    Terminal, Inc.

Alan G. Schwartz, Esq.
Wiggin & Dana
One Century Tower
265 Church Street
New Haven, CT  06508-1832
Counsel for New Haven Terminal, Inc.


Christopher P. McCormack, Esq.
Matthew A. Sokol, Esq.
Tyler, Cooper & Alcorn
205 Church Street
P.O. Box 1936
New Haven, CT  06509-1910
Counsel for Logistec Connecticut, Inc.

Ann M. Catino, Esq.
Halloran & Sage LLP
225 Asylum Street
Hartford, CT  06103-4303
Counsel for Blakeslee Arpaia Chapman, Inc.


_____
Brian P. Daniels (ct 11863)

853418.doc

9

LEXSEE 1999 U.S. DIST. LEXIS 2779

**IN SOOK YOON and MYONG SON YOON, Plaintiffs, - against - CELEBRITY CRUISES, INC., CELEBRITY CRUISE SERVICES, LTD., ATKINSON & MULLEN TRAVEL, INC. d/b/a/ APPLE VACATIONS, and UNIGLOBE ABOUT TO TRAVEL, INC., Defendants.**

**97 Civ. 3808 (DC)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*1999 U.S. Dist. LEXIS 2779*

**March 10, 1999, Decided
March 12, 1999, Filed**

**DISPOSITION:** [*1] Defendant's motion to dismiss denied in part and granted in part and plaintiffs' cross-motion denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Plaintiffs: Scott A. Brody, Esq., BRODY & BRODY, ESQS., Jericho, New York.

For Celebrity Cruises, Inc., Defendant: Stephen X. Wright, Esq., STILES & WRIGHT, P.C., New York, New York.

**JUDGES:** DENNY CHIN, United States District Judge.

**OPINIONBY:** DENNY CHIN

**OPINION:**

### MEMORANDUM DECISION AND ORDER

**CHIN, D.J.**

In this diversity case, plaintiffs seek damages in connection with personal injuries allegedly sustained by In Sook Yoon in a discotheque aboard the ship M/V Meridian during a cruise from Philadelphia, Pennsylvania to Bermuda.

Defendant Celebrity Cruises, Inc. ("Celebrity") moves to dismiss the complaint for discovery abuses and for an award of attorneys' fees pursuant to Rule 37(b) and (d) of the Federal Rules of Civil Procedure. Plaintiffs

cross-move for an order compelling Celebrity to respond to plaintiffs' discovery demands and/or precluding the information not disclosed, and awarding attorneys' fees pursuant to Rule 37(a) and (c) of the Federal Rules of Civil Procedure. For the reasons stated below, defendants' motion is granted in part and denied in part [*2] and plaintiffs' cross-motion is denied.

### BACKGROUND

On May 22, 1997, plaintiffs In Sook Yoon and her husband, Myong Son Yoon, filed this action against defendants Celebrity, Celebrity Cruise Services, Ltd. ("CCSL"), Atkinson & Mullen Travel, Inc. d/b/a Apple Vacations ("A&M"), and Uniglobe About to Travel, Inc. ("Uniglobe"), alleging breach of contract, negligence, and loss of services claims. Plaintiffs were represented by Thomas M. O'Connor, Esq. of the law firm Bushell, Kleczka, Minasi & O'Connor. Defendants, represented by Stephen X. Wright, Esq. of the law firm Stiles & Wright, P.C., filed an answer on July 2, 1997 denying the allegations and asserting affirmative defenses.

#### A. Plaintiffs' Alleged Failure to Comply

##### 1. Defendant's Initial Requests for Discovery

On June 30, 1997, defendant served on plaintiffs: interrogatories, request for production of documents and things, and notice of depositions. (Wright 6/30/98 Aff. P 5 & Ex. 3). Plaintiffs failed to answer the interrogatories, respond to the request for production, or appear for the noticed depositions. (Id. P 6). By letter dated November 4, 1997, defendant requested a premotion conference

[*3] to file a motion to dismiss because of plaintiffs' failure to comply with discovery obligations, and because plaintiffs failed to dismiss the claims against CCSL and A&M. (Id. P 7 & Ex. 4). The Court scheduled a premotion conference for December 12, 1997.

Two days prior to the premotion conference, plaintiffs answered the interrogatories, responded to the request for production of documents and things, and provided a stipulation discontinuing the action against CCSL, A&M, and Uniglobe. n1 (Id. P 8). Celebrity contends, however, that plaintiffs' answers to the interrogatories and responses to request for production were incomplete. (Id. P 8 & Ex. 5).

> n1 On January 26, 1998, the Court so ordered notices of dismissal without prejudice against A&M and Uniglobe, and a notice of dismissal with prejudice in favor of CCSL. Celebrity therefore is the only remaining defendant.

In explaining the delay, O'Connor states in his affidavit that due to a contractually shortened statute of limitations, his firm had [*4] to commence this action quickly. (O'Connor Aff. P 3). According to O'Connor, Wright "fully understood that discovery was not going forward while an attempt was made to resolve the issue as to which defendants were going to remain in the lawsuit." (Id. P 5). While a letter dated October 21 reveals that Wright agreed to "refrain from making a motion to dismiss on behalf of A&M" so that O'Connor would have additional time to determine whether there was a viable claim against A&M and Uniglobe, Wright only agreed to so refrain until October 31, 1997. (Id. Ex. A). Further, Wright clearly stated that he would "refrain from making a motion concerning plaintiffs' failure to comply with their discovery obligations until October 31, 1997." (Id.).

**2. December 12, 1997 Premotion Conference**

The Court held a premotion conference on December 12, 1997. At the conference, O'Connor agreed to: (1) furnish answers to interrogatories and respond to the request for production in compliance with the Local Civil Rules and the Federal Rules of Civil Procedure; n2 and (2) produce plaintiffs for deposition. (Wright 6/30/98 Aff. P 9). The Court ordered all discovery to be completed by April [*5] 17, 1998.

> n2 O'Connor contends that he has no recollection that this issue was discussed at the conference and submits a letter he received from

Wright dated December 16, 1997 to support this contention. (O'Connor Aff. P 6 & Ex. B).

**(a) Interrogatories and Demands**

Celebrity asserts that plaintiffs have failed to furnish compliant answers to the interrogatories n3 and respond to the request for production. (Wright 6/30/98 Aff. P 10). O'Connor states that in letters dated January 16, 1998 and February 2, 1998, his firm fully responded to the requests identified in a letter O'Connor wrote dated December 16, 1997. (O'Connor Aff. P 7 & Ex. B). O'Connor claims that Wright had not raised any complaints regarding plaintiffs' answers to interrogatories or response to demands prior to the instant motion. (Id. P 7). Plaintiffs' new counsel does not object to supplementing plaintiffs' response if necessary.

> n3 Celebrity claims, for example, that it has never received answers to interrogatories that are signed by plaintiffs. (Wright Aff. P 10 n.3).

[*6]

**(b) Depositions**

Scheduling plaintiffs' depositions has been particularly difficult. During a February 19, 1998 conversation, the attorneys agreed that March 18 and 30 and April 3, 1998 were convenient for plaintiffs' depositions. (Wright 6/30/98 Aff. P 11). In a letter dated February 20, 1998, defendant's attorney wrote to confirm the available dates requesting that plaintiffs' counsel choose one of the dates by February 27, 1998. (Id. Ex. 6). On March 26, 1998, "after several unsuccessful attempts to confirm plaintiffs' depositions for March 30, 1998," Wright sent a letter to O'Connor stating that unless advised otherwise, he would assume that plaintiffs would appear for the depositions March 30, 1998. (Id. P 13). Without explanation, plaintiffs failed to appear for their depositions on March 30, 1998. (Id. P 14).

After his February 19, 1998 conversation with Wright, O'Connor wrote a letter dated February 25, 1998 to his clients, whom he could not reach by telephone. (O'Connor Aff. P 9 & Ex. E). O'Connor did not learn until March 30, 1998 that he was having trouble contacting his clients because Ms. Yoon was "suffering from a serious illness." (Id. P 10). [*7] Upon learning of Ms. Yoon's illness, O'Connor sent a letter dated March 30, 1998 to the Court requesting that the time for discovery be extended to July 15, 1998. (O'Connor Aff. Ex. F). The letter explained that Ms. Yoon "is currently suffering from transient ischemic attacks" ("TIAs"), which prevented her from travelling to New York for her deposition. The Court memo endorsed plaintiffs' letter

granting the extension of time for discovery. Prior to receiving plaintiffs' March 30 letter, defendant's counsel wrote a letter dated April 2, 1998 to the Court requesting another premotion conference. n4

n4 The Court rejects O'Connor's contention that Wright "sought to exploit" Ms. Yoon's illness by requesting a premotion conference on April 2, 1998. (O'Connor Aff. P 11). While Wright may have received plaintiffs' March 30 letter on April 2, the same day he wrote to the Court, Wright's affidavit clearly states that he requested a premotion conference prior to receiving plaintiffs' March 30, 1998 letter. (Wright Aff. P 15).

[*8]

3. May 1, 1998 Premotion Conference

The Court held another premotion conference on May 1, 1998. O'Connor's partner, Mark D. Kleczka, Esq., attended the conference. Kleczka stated that TIAs prevented Ms. Yoon from travelling to New York. Kleczka did not explain, however, the impact of the TIAs on Ms. Yoon, why Mr. Yoon failed to appear for his deposition, and why plaintiffs' counsel had not timely responded to Wright's correspondence. O'Connor asserts that Wright did not mention his own failure to comply with discovery requests. (O'Connor Aff. P 12).

During the May 1, 1998 conference, the Court orally ordered plaintiffs' attorney to: (1) produce Mr. Yoon for deposition within two weeks of the conference; (2) provide the name of the physician treating Ms. Yoon for the TIAs and authorizations within two weeks of the conference; (3) provide defendant's attorney, by May 4, 1998, with information concerning Ms. Yoon's TIAs including restrictions, prognosis, and ability to be deposed; and (4) promptly respond to communications from defense counsel.

(a) Information Concerning Ms. Yoon's Condition

On May 4, 1998, plaintiffs' attorney agreed to send a letter to Wright [*9] about Ms. Yoon's condition by May 6, 1998. (Wright 6/30/98 Aff. P 17). Defendant's attorney did not receive such a letter on May 6 and therefore wrote a letter to the Court dated May 7, 1998 informing the Court of plaintiffs' failure to comply with the Court's oral order of May 1. (Id. P 17 & Ex. 11). Kleczka then sent a letter dated May 7, 1998 to defendant's attorney. (Id. Ex. 13). Plaintiffs' attorney explained that Ms. Yoon had suffered a stroke in May 1997, was treated for severe back pain in November and December 1997, "was in great discomfort and unable to function or travel," and had been examined for the TIA condition as well as for

"a spinal cord and spinal fluid situation." (Id.). The letter further stated that Mr. Yoon was being treated for cancer. (Id.).

(b) Outstanding Medical Authorizations

Plaintiffs' attorney did not provide defendant's counsel with medical authorizations for Doctors Lu and Mohedan, two of the doctors mentioned in plaintiffs' May 7, 1998 letter. Doctor Lu treated Ms. Yoon for the severe back pain and Doctor Mohedan evaluated her for the TIA condition. O'Connor asserts that these authorizations were not furnished to defendant [*10] because plaintiffs are not claiming that these injuries resulted from the incident on which the instant suit is based. (O'Connor Aff. P 13(b)).

(c) Depositions

In his May 7 letter, Kleczka agreed to produce Ms. Yoon for a deposition on May 13, 1998. (Wright 6/30/98 Aff. Ex. 13). Kleczka wrote a letter dated May 8, 1998 to the Court stating that Ms. Yoon was "prepared to appear for her deposition on May 13, 1998." (O'Connor Aff. Ex. H). Plaintiffs' counsel was not certain at that time, however, of Mr. Yoon's availability on that date. (Id. P 14).

In his affidavit, Wright creates the impression that plaintiffs' counsel cancelled the May 13 deposition. The parties agree that they spoke on May 12, 1998 to confirm the date for Ms. Yoon's deposition. (Wright 6/30/98 Aff. P 19; O'Connor Aff. P 16). Wright asserts that during this conversation, "plaintiffs' attorney stated that June 10, 11, or 13, 1998 were convenient dates" for Ms. Yoon's deposition. (Wright 6/30/98 Aff. P 19). According to O'Connor, however, it was Wright, not plaintiffs, who was unavailable for the May 13 deposition. (O'Connor Aff. P 16). O'Connor states that both plaintiffs had planned to travel to New [*11] York for their depositions. (Id. P 16). Wright contests this assertion and maintains that when he spoke with Kleczka on May 12, Kleczka "stated that he could not confirm that [Ms. Yoon] would appear for the taking of her deposition." (Wright Reply Aff. P 4).

Wright wrote a letter dated May 14, 1998, confirming that he would be available on June 10, 11, or 12, 1998 and requesting that plaintiffs' counsel select one of those dates by May 20, 1998. (Wright 6/30/98 Aff. P 19 & Ex. 14). Wright asserts that plaintiffs' counsel did not respond to his letter. (Id. P 20). Wright left messages for plaintiffs' counsel on May 27 and 29, 1998, which Kleczka did not return until the evening of May 29. (Wright Aff. P 20). In his affidavit, O'Connor states that Kleczka's failure to return Wright's calls earlier was not willful or negligent, but because Kleczka's wife had gone into premature labor. (O'Connor Aff. P 19). Kleczka had

not been working normal business hours from May 11 to June 5, 1998 because he was attending to his wife and four children. (Id.).

According to Wright, on May 29, 1998, Kleczka stated that he would advise Wright of another date for depositions and the status [*12] of the medical authorizations. (Wright 6/30/98 Aff. P 20). On June 10, 1998, having not received the promised response from plaintiffs' attorney, defendant's attorney advised the Court of plaintiffs' failure to comply with the Court's May 1, 1998 order.

**(d) Plaintiffs' New Counsel**

O'Connor stated in his affidavit that plaintiffs' interests would best be served by the retention of new counsel. (O'Connor Aff. P 20). On July 6, 1998, the Court received a letter dated July 1, 1998 from Scott A. Brody, Esq. of the law firm Brody & Brody. With the letter, Brody included an executed Consent to Change Attorney, which the Court so ordered on July 7, 1998 "on the condition that the present [briefing] schedule remains the same."

**B. Defendant's Alleged Failure to Comply**

O'Connor wrote the Court a letter dated May 8, 1998, in which he described defendant's failure to comply with plaintiffs' discovery demands. (O'Connor Aff. Ex. I). O'Connor explained that plaintiffs served defendant with discovery demands on December 10, 1997 and January 16, 1998, but that defendant had not responded nor requested an extension to respond. O'Connor also complained that Wright had not [*13] indicated "when he will make his client available to be deposed or when the ship will be available for inspection." (Id. Ex. I).

In a May 11, 1998 letter, however, O'Connor stated that he remembered that defendant had informed him that the ship had been sold and thus was not available for inspection. (Id. Ex. J). In his May 13, 1998 letter to the Court, Wright stated that plaintiffs' had not noticed any depositions and that plaintiffs' counsel had been advised of the purchaser and planned itinerary of the ship. (O'Connor Aff. Ex. K).

**DISCUSSION**

**A. Defendant's Motion to Dismiss**

A district court has broad discretion pursuant to *Rule 37(b) of the Federal Rules of Civil Procedure* to impose sanctions for discovery abuses. *Friends of Animals Inc. v. United States Surgical Corp., 131 F.3d 332, 334 (2d Cir. 1997).* Any sanctions imposed by a court for failure to comply with discovery obligations, however, must be just and commensurate with the failure to comply. See

*Fed. R. Civ. P. 37(b)(2); Monaghan v. SZS 33 Assocs., L.P., 148 F.R.D. 500 (S.D.N.Y. 1993).*

A court may impose the drastic sanction of dismissing a complaint. See, e.g., *Friends [*14] of Animals, 131 F.3d 332* (affirming dismissal of complaint); *Davis v. Kauff, McClain & McGuire, 1998 U.S. Dist. LEXIS 1197, No. 96 Civ. 6850, 1998 WL 50220 (S.D.N.Y. Feb. 5, 1998)* (dismissing complaint). This litigation-ending sanction is a severe remedy, however, "to be used only in extreme situations and then only when a court finds 'willfulness, bad faith, or any fault.'" *Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764 (2d Cir. 1990)* (citation omitted) (quoting *Salahuddin v. Harris, 782 F.2d 1127, 1132 (2d Cir. 1986)),* cert. denied, *499 U.S. 943 (1991); Monaghan, 148 F.R.D. at 509* (stating that drastic sanctions such as dismissing an action "are generally appropriate only when there is some element of culpability . . . that is, the party's failure must be willful, in bad faith, or through fault"); see generally Jodi Golinsky, Note, The Second Circuit's Imposition of Litigation-Ending Sanctions for Failures to Comply With Discovery Orders, *62 Brook. L. Rev. 585, 590-96 (1996)* (discussing Rule 37 and Supreme Court precedent on the propriety of imposing litigation-ending sanctions for discovery abuse).

A litigant's culpability is most often demonstrated by "persistent refusal [*15] to comply with a discovery order." *Monaghan, 148 F.R.D. at 509.* Defendant cites *Bowmar Instrument Corp. v. Continental Microsystems, Inc., 497 F. Supp. 947 (S.D.N.Y. 1980),* and *Szilvassy v. United States, 82 F.R.D. 752 (S.D.N.Y. 1979),* for the proposition that "noncompliance with a court order is not necessary before sanctions may be imposed" pursuant to Rule 37(d). In Bowmar, as defendant quotes, the court concluded that the defendants' failure to respond to discovery requests constituted "gross negligence and a willful disregard for the discovery rules," and justified entry of default judgment. *Bowmar, 497 F. Supp. at 959.* The Szilvassy court found that plaintiff's repeated failure to respond to discovery requests were severe enough to warrant dismissal. *Szilvassy, 82 F.R.D. at 757.*

Here, plaintiffs have persistently failed to comply with their discovery obligations. They failed to timely respond to defendant's June 30, 1997 requests, responding only after defendant was forced to write to the Court to request a premotion conference and only after the Court scheduled such a conference. They failed to schedule plaintiffs' depositions as counsel discussed [*16] on February 19, 1998. They failed to appear for their depositions on March 30, 1998, neglecting even to call. They failed to comply with this Court's May 1, 1998 oral order. And they failed to respond to defendant's counsel's May 14, 1998 letter. These failings have delayed the case and prejudiced defendant.

Nonetheless, the drastic remedy of dismissal is probably not appropriate in view of Ms. Yoon's apparent illness and the fact that plaintiffs' have made some effort to comply. Accordingly, plaintiffs will be given one more chance, and lesser sanctions will be imposed.

Plaintiffs are hereby ORDERED to: (1) produce both plaintiffs for deposition by April 9, 1999; schedule such depositions and confirm the dates in a letter to the Court by March 26, 1999; inform the Court immediately after the depositions are completed; (2) provide defendant with answers to interrogatories that are signed by plaintiffs by March 26, 1999; and (3) pay to defendant attorneys' fees and costs in the amount of $ 2,500. Further, plaintiffs are hereby warned that the Court will not hesitate to impose further sanctions, including dismissal of the complaint, for failure to comply with this Memorandum Decision [*17] and Order.

## B. Plaintiff's Motion to Compel

Prior to making a motion to compel discovery, the dissatisfied party must in good faith confer or attempt to confer with its adversary. *Fed. R. Civ. P. 37(a)(2)(B).* This "meet-and-confer" requirement mandates that the parties

> meet, in person or by telephone, and make a genuine effort to resolve the dispute by determining . . . what the requesting party is actually seeking; what the discovering party is reasonably capable of producing that is responsive to the request; and what specific genuine issues, if any, cannot be resolved without judicial intervention.

*Prescient Partners, L.P. v. Fieldcrest Cannon, Inc., 1998 U.S. Dist. LEXIS 1826, *7, No. 96 Civ. 7590, 1998 WL 67672, at *2-3 (S.D.N.Y. Feb. 18, 1999) (quoting Deckon v. Chidebere, 1994 U.S. Dist. LEXIS 12778, No. 93 Civ. 7845, 1994 WL 494885, at *5 (S.D.N.Y. Sept. 9,* 1994)); *Tri-Star Pictures, Inc. v. Unger, 171 F.R.D. 94, 99 (S.D.N.Y. 1997).* Courts have excused a failure to meet and confer where: (1) under the circumstances, the parties do not have time to attempt to reach an agreement; or (2) an attempt to compromise would have been clearly futile. *Prescient, 1998 WL 67672,* at *3.

On the record [*18] presented, the Court is not persuaded that plaintiffs have adequately conferred with defendant to warrant an order to compel discovery, and neither of the exceptions applies. First, plaintiffs have not included a certification with their motion that they have in good faith conferred or attempted to confer with defendant. Second, plaintiffs have not established that they have satisfied the meet-and-confer requirement. Plaintiffs cannot, for example, complain that defendant has not produced a witness for deposition if plaintiffs have not noticed a deposition. Further, defendant's cannot be expected to produce a proper witness pursuant to *Rule 30(b)(6) of the Federal Rules of Civil Procedure* if plaintiffs do not "describe with reasonable particularity the matters on which examination is requested." Accordingly, plaintiffs' motion is denied in all respects.

### CONCLUSION

For the reasons set forth above, defendant's motion is denied in part and granted in part and plaintiffs' cross-motion is denied. Plaintiffs shall pay to defendant attorneys' fees and costs in the amount of $ 2,500. The parties shall complete all discovery by April 30, 1999 and appear for a pretrial conference [*19] on that day at 11 a.m. in Courtroom 11A at 500 Pearl Street.

SO ORDERED.

Dated: New York, New York

March 10, 1999

DENNY CHIN

United States District Judge

## EXHIBIT C

## CERTIFICATION OF GOOD FAITH CONFERENCE

I hereby certify that counsel for plaintiff Coastline conferred in good faith with counsel for defendant

USS in an attempt to reach a compromise as to USS's responses to NHT's Second Set of

Interrogatories and Requests for Production of Documents and Tangible Items.  However, the parties

were not able to reach an agreement.


Date:                                                      _____
                                                            SCOTT N. KOSCHWITZ, ESQ.